## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**LANA KELSO**,
Case No.
Hon.

        Plaintiff,

v.

**GREEKTOWN CASINO, LLC**,

        Defendant.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pwky, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Compliant.

Plaintiff Lana Kelso, by and through her attorneys, Croson, Taub, & Michaels, PLLC, hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This is an action for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1101, *et seq*.; MCL § 37.1602, and retaliation under the Family and Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

2.     Plaintiff, Lana Kelso, is an individual residing in Detroit, Michigan in Wayne County and is a citizen of the State of Michigan.

3.     Defendant, Greektown Casino, LLC, is a domestic limited liability company, formed under the laws of the State of Michigan. Defendant does business in the State of Michigan with a registered resident agent in Plymouth, Michigan in Wayne County.

4.     At all times relevant hereto, Plaintiff performed work for Defendant at its location in Detroit, Michigan in the Eastern District of Michigan.

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

6.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

7.     Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Eastern District of Michigan, Defendant employed Plaintiff within the Eastern District of Michigan, and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

8.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her disability and retaliation.

9.    Plaintiff's charge was filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

10.   Plaintiff received her notice of right to sue, and she has filed this complaint within ninety (90) days of receiving her notice of rights.

## STATEMENT OF FACTS

11.   Plaintiff began working for Defendant on or about September 25, 2000 as a Slot Floorperson.

12.   Throughout her career, Plaintiff received several promotions, ultimately obtaining the title of Count Room Manager in or about August 2017.

13.   As a Count Room Manager, Plaintiff was expected to manage employees working in the count room of the casino. This included hiring, training, supervising, disciplining, and counseling employees; establishing and maintaining work schedules, forecasting departmental budgets, payroll, and supplies; and overseeing count room operations and team members.

14.   At all times relevant hereto, Plaintiff performed her job diligently and competently and was well-qualified for the positions she held.

15.     Plaintiff suffers from autoimmune disorders, mixed connective tissue disease and demyelinating disease. She also suffers from congestive heart failure and fibromyalgia.

16.     These disorders limit Plaintiff's ability to lift, walk, and stand due to persistent fatigue, weakness, and pain.

17.     Plaintiff informed Defendant about her disabilities.

18.     For most of Plaintiff's employment, Plaintiff was able to perform the essential functions of her job without accommodation despite her restrictions, except for the use of intermittent FMLA leave.

19.     However, in or around July 2020, after Defendant began operations following a shutdown due to the COVID-19 pandemic, Defendant began forcing Plaintiff to perform increased physical labor due to its failure to provide adequate staffing.

20.     The increased physical labor was outside of Plaintiff's essential job functions, as it was the work of her subordinates, and exacerbated her disabilities.

21.     Plaintiff informed her supervisor, the Director of Cage and Count Room, that the increased workload was outside of her job description and exacerbated her disability.

22.     Plaintiff also requested the reasonable accommodation of adequate staffing and/or assistance with the physical labor Defendant was forcing her to cover.

23.    Defendant did not engage in the interactive process regarding this reasonable accommodation request.

24.    Instead, Plaintiff's supervisor explicitly instructed Plaintiff to refrain from reporting her need for reasonable accommodations to HR and agreed to help with some of the physical labor herself.

25.    Despite the added help, Plaintiff still was required to perform excessive physical labor outside of her position, resulting in Plaintiff suffering a flare up of her disabilities, which led Plaintiff to take a brief medical leave in or about September and October 2021.

26.    Even after Plaintiff returned to work, Defendant still forced her to perform physical labor outside of her job duties.

27.    On or about December 26, 2021, Plaintiff became sick with COVID-19.

28.    Due to Plaintiff's disabilities, she continued suffering from long COVID, which caused even greater exacerbation of her disabilities.

29.    On or about January 7, 2022, Plaintiff contacted Defendant's HR department seeking ADA accommodations.

30.    Defendant instructed Plaintiff to contact its third-party administrator, Sedgwick.

31.     Plaintiff did so and instead of providing accommodations that would allow Plaintiff to perform her assigned job duties, Defendant ultimately approved Plaintiff for FMLA leave.

32.     On or about April 7, 2022, Plaintiff was hospitalized due to a flare up of her disabilities, resulting in chest pain and an inability to move her left side.

33.     On or about July 6, 2022, Plaintiff underwent a spinal tap for further disability diagnosis. She suffered complications related to the procedure and was briefly hospitalized.

34.     Around that time, Plaintiff and her doctor completed updated accommodation forms and submitted them to Sedgwick in accordance with policy and procedure, providing a return-to-work date of August 2, 2022.

35.     On or about July 11, 2022, the day after Plaintiff was released from the hospital, she received a warning letter from the Michigan Gaming Control Board.

36.     The letter falsely accused Plaintiff of improperly storing cans with money in the count room on November 29, 2021.

37.     Defendant was aware that this allegation was false as Plaintiff had disciplined the three individuals responsible and remedied the issue as required.

38.     On information and belief, Defendant falsely reported Plaintiff to the Michigan Gaming Control Board despite knowing that other individuals were responsible.

39.    On or about July 13, 2022, Plaintiff received confirmation that Sedgwick received her accommodation paperwork and would provide it to Defendant for review and decision regarding the accommodation request.

40.    On or about July 15, 2022, however, Defendant terminated Plaintiff's employment.

41.    Defendant claimed it was terminating Plaintiff because she did not have a return-to-work date.

42.    Defendant's proffered reason for termination was false. Plaintiff had a return-to-work date of August 2, 2022.

43.    Even after Defendant terminated her employment, Plaintiff directly presented Defendant with her return-to-work date on or about July 18, 2022.

44.    Nonetheless, Defendant refused to accommodate Plaintiff and maintained Plaintiff's termination of employment.

45.    Granting Plaintiff additional medical leave until August 2, 2022 would not have been an undue hardship for Defendant.

46.    Defendant never claimed undue hardship in relation to any of Plaintiff's requests for reasonable accommodation.

47.    As described above, Defendant failed to provide Plaintiff with reasonable accommodations and failed to engage in the interactive process.

48.     Defendant terminated Plaintiff because of her disabilities and in retaliation for exercising leave under the FMLA.

49.     Defendant terminated Plaintiff in retaliation for requesting reasonable accommodations and exercising the reasonable accommodation of medical leave.

50.     Any other reason for Plaintiff's termination is merely pretextual.

51.     On information and belief, Defendant replaced Plaintiff with a non-disabled employee.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

52.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

53.     Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit:

a.  a physical impairment, which substantially limits one or more of her major life activities, including, but not limited to, her ability to lift, walk, stand, work, and engage in the daily activities of life; and/or

b.  a record of such physical impairment.

54.     Plaintiff is a qualified individual with a disability as defined by the ADA, to-wit: Plaintiff, with or without reasonable accommodation, is able to perform the essential functions of her employment duties with Defendant.

55.     Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

56.     Plaintiff was entitled to and requested a reasonable accommodation (i.e. medical leave and/or removing non-essential physical labor from her job role), which Defendant denied by terminating Plaintiff instead of allowing her to return to work.

57.     Plaintiff was well-qualified and able to perform the essential functions of her duties with or without the requested accommodation, but Defendant instead terminated Plaintiff's employment.

58.     Defendant discriminated against Plaintiff on account of her real and perceived disabilities in violation of the ADA, 42 U.S.C. § 12112, by and through its agents, servants, and/or employees, by acts including, but not limited to terminating Plaintiff's employment and denying her a reasonable accommodation.

59.     Defendant's actions in violation of the ADA were willful.

60.     Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

61.     Plaintiff's disabilities were the motivating and/or but for cause of Defendant's actions in violation of the ADA.

62.     As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

63.     As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE PWDCRA

64.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

65.     At all times relevant hereto, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

66.     Plaintiff has a disability as defined by the PWDCRA, to-wit:

   a. a determinable physical characteristic which may result from disease, injury, congenital condition of birth, or functional disorder, to wit: mixed connective tissue disease, demyelinating disease, congestive heart failure, and fibromyalgia;

10

b.  which substantially limits one or more of her major life activities, including, but not limited to: her ability to lift, walk, stand, work, and engage in the daily activities of life;

c.  which is unrelated to Plaintiff's ability to perform the duties of her job or position, to-wit: with or without an accommodation, Plaintiff's disability does not prevent her from performing the duties of her job or position; and/or

d.  a record of such determinable physical characteristic.

67.  Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

68.  Defendant discriminated against Plaintiff on account of her real and perceived disability in violation of PWDCRA, MCL § 37.1102(1), by acts including, but not limited to: failing to provide Plaintiff with reasonable accommodation for her disability and/or terminating Plaintiff.

69.  Defendant's actions in violation of the PWDCRA were willful.

70.  Plaintiff's disabilities were the motivating and/or but for cause of Defendant's actions in violation of the PWDCRA.

71.  As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

11

72.     As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT III**
**RETALIATION IN VIOLATION OF THE ADA**

73.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

74.     At all relevant times, Defendant was a covered entity under the ADA as defined by 42 U.S.C. § 12111(2), and Plaintiff was an employee covered by and within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12111(4).

75.     Plaintiff engaged in federally protected activity by requesting reasonable accommodations for her disabilities and exercising medical leave.

76.     Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, refusing her return to work from medical leave and terminating Plaintiff.

77.     Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

78. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

79. Defendant's actions in violation of the ADA were willful.

80. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

81. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

82. As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT IV**
**RETALIATION IN VIOLATION OF THE PWDCRA**

83. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

84. As stated above, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

85.    Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act.

86.    Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

87.    Defendant retaliated against Plaintiff for her requests for a reasonable accommodation and exercise of medical leave in violation of the PWDCRA, MCL § 37.1602, by and through its agents, servants, and/or employees, by acts including, but not limited to denying Plaintiff reinstatement from medical leave and terminating Plaintiff's employment.

88.    Defendant's actions in violation of the PWDCRA were willful.

89.    Plaintiff's requests for a reasonable accommodation and/or her exercise of medical leave were the motivating and/or but for cause of Defendant's actions in violation of the PWDCRA.

90.    As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

91.    As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of

earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT V**
**RETALIATION IN VIOLATION OF**
**THE FAMILY AND MEDICAL LEAVE ACT**

92.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

93.    Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(a):

   a.  Plaintiff worked for Defendant for more than one year; and

   b.  Plaintiff worked in excess of 1,250 hours for the proceeding 12-month period at all relevant times.

94.    Defendant is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(a), as an entity or person engaged in commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

95.    Plaintiff was entitled to leave as an eligible employee who had a serious health condition that made her unable to perform assigned duties of her position.

96.    Plaintiff had a serious health condition as defined by federal regulations to the FMLA, 29 C.F.R. § 825.102:

    a. She suffered from chronic conditions, i.e., mixed connective tissue disease, demyelinating disease, congestive heart failure, and fibromyalgia, that required periodic visits for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

    b. The chronic conditions continued over an extended period of time (including recurring episodes of a single underlying condition); and

    c. The chronic conditions may cause episodic rather than a continuing period of incapacity.

    d. Her chronic conditions also caused need for inpatient care and required continuing treatment by a health care provider, including treatment two or more times within the 30 days of the first day of incapacity.

97.    Plaintiff's condition caused incapacity in that she was medically unable to perform her assigned work when she experienced a flare-up of her conditions.

98.    Plaintiff applied for and received intermittent and continuous leave under the FMLA from Defendant.

99.    Plaintiff engaged in protected activity under the FMLA by, *inter alia*, applying for and exercising leave under the FMLA.

100.    Defendant subsequently retaliated against Plaintiff because of her protected activity by, *inter alia*, terminating Plaintiff's employment.

101.   Defendant was motivated by Plaintiff's protected activity when it decided to terminate her employment.

102.   But for Plaintiff's protected activity, Defendant would not have terminated her employment.

103.   Terminating Plaintiff's employment for applying for and taking protected medical leave was retaliatory and a violation of the FMLA. 29 U.S.C. § 2615(a)(2).

104.   Defendant's actions in violation of the FMLA were willful.

105.   As a direct and proximate result of Defendant's violation of the FMLA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

106.   As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, **LANA KELSO**, requests that this Court enter the

following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of the ADA, PWDCRA, and FMLA;

b. Compensatory damages for monetary and non-monetary loss in whatever amount she is found to be entitled;

c. Exemplary damages in whatever amount she is found to be entitled;

d. Punitive damages in whatever amount she is found to be entitled;

e. Liquidated damages in an amount equal to her lost wages and benefits;

f. A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

g. An order of this Court reinstating Plaintiff to the position she would have if there had been no wrongdoing by Defendant;

h. An injunction of this Court prohibiting any further acts of discrimination or retaliation by Defendant;

i. An award of interest, costs, and reasonable attorney fees; and

j. Whatever other equitable relief this Court finds appropriate.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: September 8, 2023

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**LANA KELSO**,                                          Case No.
                                                        Hon.
               Plaintiff,

v.

**GREEKTOWN CASINO, LLC**,

               Defendant.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## **DEMAND FOR TRIAL BY JURY**

    **NOW COMES** Plaintiff, **LANA KELSO**, by and through her attorneys,

**CROSON, TAUB, & MICHAELS, PLLC**, and hereby demands a trial by jury, for all

issues so triable.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: September 8, 2023